In The
# UNITED STATES COURT OF APPEALS
For The Eighth Circuit


No. 07-3207

Criminal


UNITED STATES OF AMERICA,

Appellee,

v.

LYLE PATON,

Appellant.


Appeal from the United States District Court for the
District of Minnesota


APPELLANT'S BRIEF AND ADDENDUM


JENNIFER M. MACAULAY
MN Attorney Reg. #316842
649 Grand Avenue, Suite 2
St. Paul, MN 55105
PH: 651-231-1237

Counsel for the Appellant, Mr. Paton

# SUMMARY AND REQUEST FOR ORAL ARGUMENT

Mr. Paton was convicted of five counts of production of child pornography after entering a conditional plea allowing him to appeal pretrial suppression issues. The pretrial suppression issues involve questions of whether an investigative detention was supported by reasonable articulable suspicion, whether that detention became a formal arrest after more than an hour of custody, whether Mr. Paton voluntarily consented to search of his wallet and seizure of evidence therein, and whether the search warrant was supported by particularized probable cause.

Mr. Paton also challenges the imposition of a sentence of life imprisonment on Eighth Amendment grounds.

Paton respectfully requests oral argument and believes that 15 minutes per side is sufficient.

Appellate Case: 07-3207    Page: 2    Date Filed: 12/10/2007 Entry ID: 3382402

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ iv

PRELIMINARY STATEMENT ........................................................ viii

STATEMENT OF ISSUES ................................................................ ix

STANDARD OF REVIEW .................................................................1

STATEMENT OF THE CASE ............................................................2

STATEMENT OF FACTS .................................................................3

SUMMARY OF ARGUMENT ..........................................................11

ARGUMENT ...................................................................................14

   I.  Officer's protracted detention of Mr. Paton, and simultaneous
seizure of his property for evidentiary purposes violated the Fourth
Amendment; the evidence flowing therefrom should have been
suppressed as a matter of law. ...........................................................14

     A.    The protracted investigative detention, (not justified by reasonable
articulable suspicion) developed over time into a  full-scale arrest (unauthorized
by warrant or probable cause). .......................................................14

     B.    Mr. Paton did not voluntarily consent to give the officers his wallet and
camera card during the protracted detention/arrest. .........................................24

     C.    All evidentiary fruits of this series of unconstitutional intrusions should
have been suppressed, separately and cumulatively, as each was the fruit of the
previous. .....................................................................................26

   II.  The search warrant affidavit did not provide adequate
particularity or a nexus with criminal activity necessary for probable
cause to support issuance of a warrant; evidence received therefrom

ii

Appellate Case: 07-3207      Page: 3      Date Filed: 12/10/2007 Entry ID: 3382402

should have been suppressed. .................................................................28

III.  Sentencing a 60 year old diabetic man to life imprisonment is a
cruel and unusual punishment and therefore unreasonable under any
construction of the Guidelines or sentencing statutes..........................................31

CONCLUSION ......................................................................................34

ADDENDUM INDEX

1. Report and Recommendation                          A-1 – A-14

2. Order (adopting Report and Recommendation in part)  A-15 – A-18

3. Memorandum Opinion (related to adoption of R&R)     A-19 – A-25

APPELLANT'S APPENDIX INDEX  (Bound Separately)

District Court Docket Report (06-CR-298)              AA-1 – AA-9

Indictment                                           AA-10 – AA-17

Judgment in a Criminal Case                          AA-18 – AA-23

July 17, 2006 Search Warrant and return              AA-24 – AA-33

iii

# TABLE OF AUTHORITIES

## Cases

*Brinegar v United States,* 338 U.S. 160 (1949) ......................................................16

*Brown v. Illinois*, 422 U.S. 590, 603-604 (1975) ....................................................28

*Ewing v. California,* 538 U.S. 11, 20 (2003) ..........................................................33

*Florida v. Royer,* 460 U.S. 491, 500 (1983).............................................................14

*Helm v. Solem,* 684 F.2d 582, 585-6 (8th Cir. 1982) ................................................32

*Illinois v. Gates,* 462 U.S. 213, 238 (1983)..............................................x, 16, 28, 29

*Michigan v. Chesternut,* 486 U.S. 567 (1988) .........................................................21

*Michigan v. Summers,* 452 U.S. 692, 698 (1981) ....................................................22

*Neal v. Grammar,* 975 F.2d 463, 465 (8th Cir. 1992)................................................2

*Ornelas v. United States,* 517 U.S. 690, 696 (1996) ................................................16

*Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) ............................................24

*Solem v. Helm,* 463 U.S. 277, 289-90 (1983) .....................................................x, 33

*Terry v. Ohio,* 392 U.S. 1 (1968) ...........................................................................15

*United States v. Almendares*, 397 F.3d 653, 660 (8th Cir.2005) ............................25

*United States v. Atteberry*, 447 F.3d 562 (8th Cir. 2006)........................................31

Appellate Case: 07-3207    Page: 5    Date Filed: 12/10/2007 Entry ID: 3382402

*United States v. Beck,* 140 F.3d 1129 (8th Cir. 1998)........................................ ix, 18

*United States v. Becker,* 333 F.3d 858, 862 (8th Cir. 2003 ...............................27, 28

*United States v. Bloomfield,* 40 F.3d 910 (8th Cir. 1994) ( *en banc*)......................19

*United States v. Bradley,* 234 F.3d 363, 366 (8th Cir.2000) ...................................25

*United States v. Cedano-Medina,* 366 F.3d 682, 684-85 (8th Cir. 2004) ...............24

*United States v. Chaidez,* 906 F.2d 377, 380 (8th Cir.1990) ...................................25

*United States v. Chamberlain,* 163 F.3d 499, 503 (8th Cir. 1998) .........................20

*United States v. Cortez,* 449 U.S. 411, 417 (1981) ................................................16

*United States v. Czeck,* 105 F.3d 1235, 1239 (8th Cir.1997) ..............................1, 24

*United States v. Davis,* 471 F.3d 938, 946 (8th Cir.2006) ..................................x, 28

*United States v. Dixon,* 51 F.3d 1376, 1380 (8th Cir. 1995)...................................16

*United States v. Gipp,* 147 F.3d 680, 685 (8th Cir.1998)........................................24

*United States v. Gladney,* 48 F.3d 309, 313 (8th Cir.1995) ................................x, 29

*United States v. Griffin,* 922 F.2d 1343, 1347 (8th Cir.1990)............................1, 20

*United States v. Hernandez-Hernandez,* 384 F.3d 562, 565 (8th Cir.2004) ............24

*United States v. Hines,* 387 F.3d 690, 694 (8th Cir.2004) ........................................2

*United States v. Hughes,* 15 F.3d 798, 802 (8th Cir. 1993) ....................................15

*United States v. Janis,* 387 F.3d 682 (8th Cir. 2004) .................................................1

*United States v. Jones,* 269 F.3d 919 (8th Cir. 2001) ............................................. ix

Appellate Case: 07-3207    Page: 6    Date Filed: 12/10/2007 Entry ID: 3382402

*United States v. Leichtling,* 684 F.2d 553, 555 (8th Cir.1982) ................................29

*United States v. Maltais,* 403 F.3d 550, 554 (8th Cir. 2005) ....................................19

*United States v. Mancias,* 350 F.3d 800, 804 (8th Cir.2003)......................................2

*United States v. May,* 440 F.Supp.2d 1016, 1039 (D.Minn. 2006).........................29

*United States v. Mendoza,* 121 F.3d 441, 442-43 (8th Cir. 1997)...........................31

*United States v. Miller,* 974 F.2d 953, 957 (8th Cir.1992)......................................16

*United States v. Moreno*, 280 F.3d 898, 900 (8th Cir. 2002)...................................28

*United States v. Morse,* 983 F.2d 851 (8th Cir. 1993) ...............................................2

*United States v. Murphy,* 899 F.2d 714 (8th Cir. 1990)...........................................31

*United States v. Navarette-Barron,* 192 F.3d 786, 790 (8th Cir. 1999)..................19

*United States v. Olvey,* 437 F.3d 804, 807 (8th Cir.2006) ......................................29

*United States v. Place,* 462 U.S. 696 (1983)...................................................... ix, 23

*United States v. Sanchez,* 417 F.3d 971, 974 (8th Cir. 2005) ...................................1

*United States v. Sharpe,* 470 U.S. 675, 682 (1985).................................................17

*United States v. Siwek,* 453 F.3d 1079, 1083 (8th Cir.2006) ....................................2

*United States v. Smith*, 260 F.3d 922, 924 (8th Cir. 2001) .....................................25

*United States v. Tagbering,* 985 F.2d 946, 949 (8th Cir.1993)................................29

*United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000).....................................30

*United States v. Thompkins,* 998 F.2d 629, 633 (8th Cir.1993)...............................15

Appellate Case: 07-3207    Page: 7    Date Filed: 12/10/2007 Entry ID: 3382402

*United States v. Tillman,* 81 F.3d 773, 775 (8th Cir. 1996) ......................................22

*United States v. Turner,* 431 F.3d 332, 336 (8th Cir. 2005) .....................................1

*United States v. White,* 42 F.3d 457 (8th Cir. 1994) ................................................19

*United States v. Williams,* 477 F.3d 554, 557 (8th Cir.2007) .................................28

*United States v. Willis,* 967 F.2d 1220, 1224 (8th Cir.1992) ..................................14

*United States v.Wood,* 106 F.3d 942, 948 (10th Cir. 1997) ....................................18

*Wong Sun v. United States,* 371 U.S. 471, 484 (1963)............................................27

## Statutes

18 U.S.C. §§2251 ...........................................................................................2, 31

18 U.S.C. §§2252 ...................................................................................................2

18 U.S.C. §3231 ............................................................................................... viii

18 U.S.C. §3742 ............................................................................................... viii

28 U.S.C. § 1291 .............................................................................................. viii

## Constitutional Provisions

Amendment IV, United States Constitution........................................................x, 14

Amendment VIII, United States Constitution....................................................x, 32

Amendment XIV, United States Constitution ....................................................... ix

Appellate Case: 07-3207    Page: 8    Date Filed: 12/10/2007 Entry ID: 3382402

## PRELIMINARY STATEMENT

The United States District Court for the District of Minnesota, the Honorable Patrick Schiltz, exercised jurisdiction pursuant to 18 U.S.C. §3231. The court sentenced Appellant, Lyle Paton, on September 6, 2007, and entered judgment on September 11, 2007. (See district court file No. 06-00298 (PJS/SRN), Docket No. 61, 63 (AA-18[1]). Paton timely filed his Notice of Appeal on September 14,2007. (AA-8; R64). The Judgment and Commitment entered disposed all of the parties' claims in the court below. This Court's jurisdiction is derived from 28 U.S.C. § 1291; 18 U.S.C. §3742.

---

1 References to the Addendum will be designated herein as "A-[page #]" references to Appellant's Appendix will be designated as "AA-[page#]" and references to the district court record as "R-[docket line #]".

Appellate Case: 07-3207     Page: 9     Date Filed: 12/10/2007 Entry ID: 3382402

## STATEMENT OF ISSUES
## I.

Whether the district court erred in denying Paton's motion to suppress on Fourth Amendment grounds because the officer: (a) did not have reasonable suspicion to extend detention beyond a brief pat-down and request for identification; (b) detained Paton for an unreasonable amount of time  even if the officer did have reasonable suspicion; or (c) did not have probable cause or voluntary consent to seize Paton's wallet and film card.

Apposite Authority:

*United States v. Beck,* 140 F.3d 1129, 1133 (8th Cir. 1998)

*United States v. Jones,* 269 F.3d 919 (8th Cir. 2001)

*United States v. Place,* 462 U.S. 696 (1983)

Amendment XIV, United States Constitution

## II.

Whether the search warrant affidavit provided sufficient particularity and nexus to criminal activity to create probable cause necessary to support the search warrant issued.

Apposite Authority:

Appellate Case: 07-3207     Page: 10     Date Filed: 12/10/2007 Entry ID: 3382402

*United States v. Davis,* 471 F.3d 938, 946 (8th Cir.2006)

*Illinois v. Gates,* 462 U.S. 213, 238 (1983)

*United States v. Gladney,* 48 F.3d 309, 313 (8th Cir.1995)

Amendment IV, United States Constitution

## III.

Whether sentence of life imprisonment was reasonable.

Apposite Authority:

*Solem v. Helm,* 463 U.S. 277, 289-90 (1983)

Amendment VIII, United States Constitution

x

## STANDARD OF REVIEW

The district court's factual findings regarding Paton's motion to suppress are reviewed for clear error; whether the Fourth Amendment was violated through investigative detention or formal arrest, and whether the search warrant was supported by probable cause, are both reviewed de novo. *See United States v. Turner,* 431 F.3d 332, 336 (8th Cir. 2005) (applying split standard to review validity of search warrant); *United States v. Sanchez,* 417 F.3d 971, 974 (8th Cir. 2005) (applying same standard when reviewing reasonableness of investigative detention); *United States v. Janis,* 387 F.3d 682 (8th Cir. 2004).

As to the question of whether an investigative detention has become a formal arrest, this Court reviews the district court's findings concerning custody under a clearly erroneous standard. *See United States v. Griffin,* 922 F.2d 1343, 1347 (8th Cir.1990).

The government bears the burden of proving voluntary consent to a search by a preponderance of the evidence, *United States v. Czeck,* 105 F.3d 1235, 1239 (8th Cir.1997), and this Court reviews a district court's finding of voluntary consent under a clear error standard. *United States v. Siwek,* 453 F.3d 1079, 1083 (8th

1

Cir.2006); *United States v. Mancias,* 350 F.3d 800, 804 (8th Cir.2003); *United States v. Hines,* 387 F.3d 690, 694 (8th Cir.2004).

This Court reviews an Eighth Amendment sentence challenge to determine whether the sentence is grossly 'disproportioned' to the crime. *Neal v. Grammar,* 975 F.2d 463, 465 (8th Cir. 1992). The standard of review is particularly narrow. *United States v. Morse,* 983 F.2d 851 (8th Cir. 1993).

## STATEMENT OF THE CASE

On July 7, 2006, Saint Paul Police Department officers arrested Lyle Paton in Saint Paul Minnesota, after he was discovered in a park with children, with a digital camera, on suspicion of production of child pornography. On September 12, 2006, Mr. Paton was charged in a six-count indictment in the District of Minnesota. (R 1). Counts One through Five charged him with production of child pornography related to separately enumerated victims, in violation of 18 U.S.C. §§2251(a) and (e). Count Six charged him with possession of child pornography in violation of 18 U.S.C. §§2252(a)(4)(B) and (b)(2).

On October 23, 2005, Mr. Paton filed a motion to suppress, alleging that the detention, arrest, search and seizure of Mr. Paton, his home and his vehicle by the officers violated his Fourth Amendment rights. (R18, R37). On January 4, 2007,

2

Magistrate Judge Susan R. Nelson filed a Report and Recommendation , recommending that the district court deny the motion to suppress. (R40; A.-1). Mr. Paton timely filed objections to the Report and Recommendation. (R42). On February 6, 2007, the district court, the Honorable Patrick J. Schiltz denied the motion, adopting the Report and Recommendation in part. (R47; A-22). On March 29, 2007 Judge Schiltz filed a Memorandum Opinion regarding the order. (R52; A-24).

Pursuant to a plea agreement, on June 17, 2005, Mr. Paton entered a conditional guilty plea to all six counts of the indictment (R54, 55; Plea Hearing Transcript). On September 6, 2007, Judge Schiltz sentenced Mr. Paton to life in prison, and lifetime supervised release, and $500 special assessment. (R61; AA-18; R63).

Mr. Paton timely filed his notice of appeal on September 14, 2007. (R64).

## STATEMENT OF FACTS

On July 7, 2006, Lyle Paton drove his wife's vehicle to a local park, Lilydale Park, with some neighborhood boys. (R&R p. 2; A-2). A "concerned citizen"

Appellate Case: 07-3207    Page: 14    Date Filed: 12/10/2007 Entry ID: 3382402

contacted the police when s/he witnessed Mr. Paton entering the woods with a digital camera and the five young black boys. (Id.)  Mr. Paton is Caucasian.  The boys accompanying him were of Asian-American descent. (Id.)  The call was received by St. Paul Police Department ("SPPD") Officer Colleen Lesedi, a patrol officer on routine patrol. (Id.)

When Officer Lesedi arrived at Lilydale Park, she spoke directly with the concerned citizen, who reported that her concerns were based on the fact that the white male was shabbily dressed, one of the kids was smoking, the kids appeared "sober" and their "body language was off". (Id. at 3).  These observations indicated to the concerned citizen that the kids were probably not having a good time. (Id.)  The concerned citizen identified the vehicle she saw the group arrive in.  (S.H.T. p. 10 [2]).  Officer Lesedi then parked her squad car behind this vehicle "so that it wouldn't leave while I was in the woods". (A-3)

Officer Lesedi entered the woods of the park, looking for the group, but she did not anyone until she was exiting the woods when she encountered Mr. Paton and five young men of Asian-descent.  (Id.)  She approached the group and asked

---

2 References to "S.H.T. #" are to the Transcript of the Suppression Hearing, held on November 22, 2006, before Magistrate Judge Susan R. Nelson; References to "S.T. #" are to the transcript of the Sentencing Hearing on September 6, 2007

4

what they were doing in the woods. (Id.) She testified that her tone was "just conversational". (S.H.T. p. 12). One of the kids responded that they were looking for fossils; Officer Lesedi asked if they had found any, and the kid responded that they had not. (Id. at 13; A-3) At the suppression hearing, Officer Lesedi testified that she thought the kids appeared to be "on edge" (Id.), though she did not specify any basis for this conclusion.

Mr. Paton was wearing a short sleeved, button-up shirt, khakis and beat-up dress shoes. (Id.) Officer Lesedi found this suspicious. (Id.) Officer Lesedi asked Mr. Paton for his ID and he provided it, verifying his identity. (Id.) Officer Lesedi noticed that Mr. Paton was carrying a digital camera. (S.H.T. 14; A-3) She exited the woods ahead of the group and returned to her squad car in the park parking lot. (A-4)

When she returned to the parking lot, she used her cell phone to call "Channel 5" (a police channel that does checks on people in cars (S.H.T. 14)) and learned that Defendant was a registered sex offender. (Id.) Officer Lesedi then contacted the BCA and talked to Gretchen, who told her that Lyle Paton had convictions for pornography and criminal sexual conduct in the third degree against

---

before Judge Patrick J. Schiltz.

Appellate Case: 07-3207     Page: 16     Date Filed: 12/10/2007 Entry ID: 3382402

a "black juvenile male". (Id. at 15). When Officer Lesedi asked Gretchen at the BCA how she should handle Lyle Paton, Gretchen eventually concluded that police should do whatever they can to protect the children. (Id.)

During this telephone exchange, Officer Lesedi saw Mr. Paton leaving the woods alone, and walking toward his vehicle, blocked in by Lesedi's squad. (Id.) He appeared to be waiting for the kids to meet him. (Id.) Officer Lesedi yelled out to Mr. Paton to wait where he was. (Id.) The kids came out of the woods moments later and waited by Mr. Paton's car, while Mr. Paton waited with Officer Lesedi. (Id.)

Officer Lesedi called for backup. When backup arrived, one of the reporting officers, Officer Schuck conferred with Officer Lesedi and then approached Mr. Paton and conducted a pat-down search and found no weapons. (Id.)

Officer Schuck told Mr. Paton that he was not under arrest but nonetheless would be required to sit in the back of Officer Lesedi's squad car. (S.H.T. 18; A-4.) Mr. Paton complied and was cooperative. (Id.) The Officers testified that they wanted Mr. Paton to sit in the car because it was air-conditioned, and it was a hot day (S.H.T.24; A-4) and also for officer safety. (S.H.T. 24). He was not

6

handcuffed while he was in the back of the locked squad car. (Id.)  Officer Lesedi testified that at the point when she parked her squad behind Mr. Paton's car, prior to her encounter with Mr. Paton, it was to indicate that Mr. Paton could not leave, and in effect, to prevent him from leaving.  (S.H.T. 23-24).

While Mr. Paton was locked in the squad car, Officer Schuck asked Officer Lesedi if she knew where the camera was. (Id. at 5)  Officer Lesedi did not realize the camera was missing.  (Id.) She asked the kids if they knew where the camera was, and they said they saw Mr. Paton with the camera when he was walking toward the parking lot.  (Id.)

Other officers then arrived, including Officer O'Brien, Officer Clarkin and a canine unit officer with his canine. (Id.)  The canine located the camera off of the path into the woods, with the memory card door open, and with no digital memory card. (Id.)  Officer Schuck asked Mr. Paton where the digital memory card was. (Id.)  Mr. Paton replied that it was in his wallet.

Officer Lesedi testified that Officer Schuck told her he had asked Mr. Paton for the memory card, and Mr. Paton voluntarily provided it to Officer Schuck, while he remained seated in the back of the squad car.  (S.H.T. 26).

7

During the time that Mr. Paton remained in the back of the squad car, none of the children asked the officers for assistance or protection.  (Id. at 25). There was no indication that the children were being held against their will.  (Id. at 26).  When Officer Lesedi contacted the father of one of the children, the father indicated that he had given permission for his son to accompany Mr. Paton to the park.  (Id.)

While Mr. Paton remained detained in the rear of the squad car, police interviewed the children.  The boys reported that Mr. Paton had taken three photographs of each boy holding a fossil. (A-6).   They denied that any pornographic photos were taken.  (Id.)  Mr. Paton also denied that any pornographic photos were taken. (Id.)

During the detention, officers also contacted Mr. Paton's wife, Helen Brown Bruce, to whom the blocked-in vehicle was registered.  (Id.) One of the officers left and met Mrs. Bruce at her place of employment and obtained her consent to search the vehicle, and transported her to Lilydale Park where her husband remained detained. (Id.)  Officers then searched the vehicle and uncovered a second digital memory card. (Id.)

At the conclusion of this investigation, Mr. Paton was released and went home with his wife.

8

A little over a week later, on July 17, 2006, St. Paul Police Sergeant Julie K. Harris swore an affidavit and made an application for a warrant to search Mr. Paton's residence, vehicle and person for *inter alia,* computer equipment, child pornography, notes, journals and documentation, digital camera equipment, and photographs, computer images, or "media believed to contain or capable of containing images child pornography." (AA-24-33)

The Government summarized the observations in the affidavit allegedly supporting probable cause for the warrant as follows:

1. The defendant is a predatory offender and has been convicted of mailing obscene matter involving child pornography and engaging in criminal sexual conduct with a juvenile male.

2. On July 7, 2006, the defendant took five unrelated juvenile males to a secluded park and brought a digital camera. The juvenile males demonstrated somber body language and indicated that the defendant had taken pictures of them with a digital camera while they were looking for fossils. The defendant denied taking any photographs.

3. After encountering Officer Lesedi and prior to walking out of the woods, the defendant abandoned the digital camera in the weeds. The camera was found with the shutter door open and the memory card was missing. The memory card was found in the defendant's wallet and was damaged as if someone was picking it apart with their fingernail.

4. Two of the juvenile males that were at the park with the defendant on July 7, 2006 were interviewed at Midwest Children's Resource Center and disclosed that the defendant had taken nude photographs of them over the past two years. They disclosed that the defendant would give

9

them gifts in exchange for posing for nude photographs. One of the juvenile males disclosed that he had been sexually touched by defendant.

(Government's brief in opposition to Defendant's Motion to Suppress, R-39; *see also,* AA-24-33.).

Appellate Case: 07-3207    Page: 21    Date Filed: 12/10/2007 Entry ID: 3382402

## SUMMARY OF ARGUMENT

This case involves a guy discovered with a coterie of young male company in the woods of a local park. A concerned citizen, anonymous for all practical purposes, called the police when she saw this guy enter the park with these kids. This anonymous, concerned citizen thought something was fishy. Among the things she thought was fishy: An old white guy with a bunch of black kids. If this citizen were defined, we'd have to inquire into the other things she finds suspicious.

Police arrive, block in the suspicious white guy's car (identified by the suspiciously suspicious citizen as belonging to the suspicious suspect) so he can't leave and begin looking for this guy in the woods of the park. Police encounter a white guy with Asian kids, wearing scuffed shoes, verify his identity and then leave the suspicious guy with the kids and proceed back out to the squad car to wait. After determining that this guy is a registered sex offender who likes black teenagers, a determination is made that this guy will have to sit in the back of the squad for as long as possible, until police can find evidence of a crime. This is a cold crucible, because the squad car is air-conditioned, purportedly for this guy's comfort.

There is absolutely no evidence of a crime, except for that this guy is with Asian kids in a park, and he has a digital camera. Chicanery ensues over what

11

happened to the camera. When the camera is found by a canine team, it's inoperable, and the assumption is that this sex-offender-guy probably threw the camera into the woods and destroyed the digital card. (They ask the guy if he knows where the card is, and he has it and gives it to them.) There is no evidence of this because both the guy and his young companions deny any misfeasance relating to the camera, when interviewed separately. Police call the guy's wife at work and get permission to search the car he's driving. They find another digital card in the car, along with other sundry car-floor junk. They call the father of one of the kids and verify the kids' and the guy's story—that the parents said it was okay for the kids to be with this guy. They weren't kidnapped or being held against their will.

There was no evidence of a crime, after more than an hour of this guy sitting in the relative comfort of restrained liberty in the back of a squad car.

A warrant application is sworn out, reiterating the standard language about how registered sex offenders are often pedophiles, how pedophiles often hang out with children, and pedophiles take pictures of children. Pictures require cameras. Cameras are sometimes digital. Digital cameras require computers. Computers are often in homes. Therefore this guy probably has pornography on his computer and police should be allowed to knock down the door at night to take the computer. Despite *any* direct evidence that there was a computer in this guy's house, or *any*

Appellate Case: 07-3207    Page: 23    Date Filed: 12/10/2007 Entry ID: 3382402

indication of criminal activity related to this alleged computer, this search warrant issued.

Everything about this investigation, from the initial detention when police blocked in this guy's car, to the hour-long arrest without probable cause in the back of the squad car, to the non-voluntary consent where the guy gives the cop the digital card in his wallet, up to the search warrant based on conjecture…offends the Fourth Amendment.

This "guy" is Lyle Robert Paton, the Appellant in this case. He has been sentenced to life imprisonment for production of child pornography, despite the fact that he is a 60 year old diabetic whose liberties were infringed upon to gather the evidence necessary for a conviction.

Mr. Paton moved for suppression of the evidence gathered in violation of his rights under the Fourth Amendment to the United States Constitution, and that motion was denied. He made a conditional plea of guilty allowing him the right to appeal the pretrial suppression ruling. He now appeals that ruling along with the constitutionality of his life imprisonment sentence.

13

# ARGUMENT

## I.  Officer's protracted detention of Mr. Paton, and simultaneous seizure of his property for evidentiary purposes violated the Fourth Amendment; the evidence flowing therefrom should have been suppressed as a matter of law.

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.   The scope of a Fourth Amendment intrusion "will vary to some extent with the particular facts and circumstances of each case." *Florida v. Royer,* 460 U.S. 491, 500 (1983); *see also United States v. Willis,* 967 F.2d 1220, 1224 (8th Cir.1992). "The scope of the detention must be carefully tailored to its underlying justification." *Royer,* 460 U.S. at 500. This means that the Fourth Amendment intrusion "must be temporary and last no longer than is necessary to effectuate the purpose of the stop" and that the officer should employ the least intrusive means available to dispel the officer's suspicion in a timely fashion. *Id.*

### A.  The protracted investigative detention, (not justified by reasonable articulable suspicion) developed over time into a  full-scale arrest (unauthorized by warrant or probable cause).

14

Mr. Paton was stopped at the moment he became aware that Officer Lesedi had parked her squad car behind his vehicle, preventing him from leaving. He was held for another hour, during which time he provided evidence to another officer. An argument can be made, has been made, and has been adopted by the district court, that this stop never turned into a custodial arrest. According to this same litany, this stop never amounted to more than an investigatory detention, and began if at all, after Mr. Paton was detained in the squad. Assuming *arguendo* that these arguments hold clear constitutional water, the investigative stop (as such) still was not supported by reasonable articulable suspicion of criminal activity afoot, and still, as a result violates the Fourth Amendment.

An investigative stop is permitted under the Fourth Amendment when a law enforcement officer is able to point to specific and articulable facts which, taken with rational inference from those facts, create a reasonable suspicion that the person has or is about to commit a crime. *Terry v. Ohio,* 392 U.S. 1 (1968); *United States v. Thompkins,* 998 F.2d 629, 633 (8th Cir.1993); *United States v. Hughes*, 15 F.3d 798, 802 (8th Cir. 1993).

The *Terry* line of cases does not mean to say that once an individual has been convicted of a sex offense requiring registration, that *Terry* allows law enforcement

Appellate Case: 07-3207    Page: 26    Date Filed: 12/10/2007 Entry ID: 3382402

to detain an individual for as long as necessary to see if that individual might be up to something subversive. Reasonable articulable suspicion is a standard at least a quantum of evidence right above that. In this case, it appears that law enforcement, and the government have construed it as the former.

Seizures fall into two categories: investigative stops and arrests. There is no bright line of demarcation between the two. *United States v. Dixon,* 51 F.3d 1376, 1380 (8th Cir. 1995); citing *United States v. Miller,* 974 F.2d 953, 957 (8th Cir.1992). In distinguishing between a stop and an arrest, the Court should consider the length of the detention and the conduct of the law enforcement officers. *Id.*

The Supreme Court has defined reasonable suspicion as "a particularized and objective basis" for suspecting the person stopped of criminal activity *United States v. Cortez,* 449 U.S. 411, 417 (1981) and probable cause to search as "existing where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States,* 517 U.S. 690, 696 (1996) citing, *Brinegar v United States,* 338 U.S. 160 (1949); *Gates* 462 U.S. 213.

When Officer Lesedi parked her squad behind Mr. Paton's vehicle, this was the point in this investigation when law enforcement first initiated a stop. In determining the reasonableness of a *Terry*-type seizure, the court must examine: "

16

'whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.' " *United States v. Sharpe,* 470 U.S. 675, 682 (1985). Arguably, this stop went into practical effect the moment Mr. Paton realized he could not leave—the moment he walked out of the woods, while Officer Lesedi was on the phone looking for a reason to justify the fact that she had prevented Mr. Paton from leaving. She seemed to think she found it when she discovered Mr. Paton was a registered sex offender.

However, this alone could not and *did not* give law enforcement reasonable articulable suspicion to initiate an investigative detention. Guy with racial-minority teenagers behaving awkwardly . . . Scuffed dress shoes . . . Camera . . . Registered sex offender. If connecting the dots between these observations creates reasonable articulable suspicion, it would in just about *any* factual scenario involving "registered sex offender": (Apple, chair, teddy bear, registered sex offender; Flower, towel, videotape, "registered sex offender"; vehicle, dog, dishwasher, *registered sex offender*…based upon a law enforcement officer's training and experience…)

What would a man/woman of reasonable prudence think? That probably depends on what reasonable prudence means. It doesn't mean that the judiciary

17

ought to take a poll, though if it did, reasonable prudence would mean that registered sex offenders are always dangerous, are always suspicious, are always guilty, even if we don't know exactly what they're guilty of yet. Such a poll would evince a society-wide fear of the Twenty-first-Century pariah, a Salem-Witch-trial mentality. Officers of the Court, and of the Law take a higher oath, an oath to be a more reasonable reasonably prudent person. A reasonably prudent law enforcement officer would take "registered sex offender" out of the equation unless it directly corroborated another factor in his or her investigation or case. *See, Jones,* 269 F.3d at 929 (quoting *Beck,* 140 F.3d at 1137, quoting *United States v.Wood,* 106 F.3d 942, 948 (10th Cir. 1997). (" ' '[I]t is impossible for a combination of wholly innocent factors to combine into a suspicious conglomeration unless there are concrete reasons for such an interpretation.' ' " ).

The law allows society to disenfranchise felons. It allows society to imprison and civilly commit dangerous offenders. It allows for intrusion and supervision of a convicted felon's affairs that lays waste to any guarantees provided by the Fourth Amendment in *most areas* of that felon's life. It provides for registration, making convicted sex offenders into social pariahs. It need not extend into the arena of criminal constitutional jurisprudence. Some things, like these consecrated constitutional rights, cannot be impugned in a just society. Law enforcement is

18

both the protector and the guardian of the rights of people in a just society. A

reasonably prudent law enforcement officer should be viewed in this light.

And then there is a point in every investigative detention where it has crossed

over into a situation where *Miranda*-related rights apply. This is considered the

point of "formal arrest". Arguably, after an hour, legally a detention has passed this

point. The district court Judge in adopting the magistrate's recommendations relied

on *United States v. Maltais,* 403 F.3d 550, 554 (8th Cir. 2005), *cert. denied,* 126 S.

Ct. 1345 (2006), *United States v. White,* 42 F.3d 457 (8th Cir. 1994), and *United*

*States v. Bloomfield,* 40 F.3d 910 (8th Cir. 1994) ( *en banc*), which held that delays

of three hours, eighty minutes, and one hour respectively to wait for a drug dog

were permissible based on reasonable suspicion. (See, A-10). However, *Maltais*

emphasized that the detention there would be unreasonable under different

circumstances, emphasizing that the stop was in the middle of the night, near the

border, in a remote area, and the officers had concrete reasons to suspect the

defendant of being a member of an international drug-smuggling group. 403 F.3d at

553, 555. *Miranda* and its progeny provide useful guidance on this area of law

where there is no "bright line of demarcation". *But see, United States v. Navarette-*

*Barron,* 192 F.3d 786, 790 (8th Cir. 1999) (Holding an investigative detention may

turn into an arrest if it "lasts for an unreasonably long time or if officers use

19

unreasonable force."). This Court in *United States v. Chamberlain,* 163 F.3d 499,

503 (8th Cir. 1998), held although the determination is ultimately influenced by the

totality of the circumstances, six non-exhaustive factors are worthy of

consideration:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest;
>
> (2) whether the suspect possessed unrestrained freedom of movement during questioning;
>
> (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions;
>
> (4) whether strong arm tactics or deceptive stratagems were employed during questioning;
>
> (5) whether the atmosphere of the questioning was police dominated; or
>
> (6) whether the suspect was placed under arrest at the termination of the questioning.

*Id.,* citing, *Griffin,* 922 F.2d at 1349.

Here, law enforcement prophylactically advised Mr. Paton was not under

arrest before they required him to remain in the squad car for over an hour. They

did not advise him that he was free to leave, or that questioning was voluntary.

Although Mr. Paton did not purposefully avoid contact with law enforcement, he

Appellate Case: 07-3207    Page: 31    Date Filed: 12/10/2007 Entry ID: 3382402

was cooperative and complied with what he perceived as a layman to be lawful orders. Although detention in a squad car for over an hour while that car blocks the exit of a defendant's own mode of transportation is arguably a strong arm tactic or deceptive strategy, no overt efforts in this regard were made during Mr. Paton's detention. There should be no question that the police dominated the atmosphere around the squad car where Mr. Paton was detained. At least two other squad cars, including a canine unit had been dispatched and area was surrounded by police activity. Mr. Paton was not taken into further police custody after conclusion of his detention. Because the warrantless intrusion into Mr. Paton's affairs concluded with no concrete evidence of criminal activity, police ultimately released him.

The officers who detained Mr. Paton on the afternoon in question claim they kept him in the squad car both for officer safety and for his own comfort. There is no evidence that there was any legitimate concern (objectively or subjectively) for officer safety. Nor is there any evidence that Mr. Paton was (objectively or subjectively) more comfortable locked in the back of a squad car. The subjective intent of an officer is relevant to an assessment of the Fourth Amendment implications of police conduct only to the extent that the intent has been conveyed to the person confronted. See *Michigan v. Chesternut,* 486 U.S. 567 (1988). When a law enforcement officer restrains the liberty of a citizen by means of a show of

Appellate Case: 07-3207    Page: 32    Date Filed: 12/10/2007 Entry ID: 3382402

authority, a seizure occurs.

Although police may have "felt" that Mr. Paton should not have felt restrained, they gave him no objective indication that he was free to leave. Everything indicated the contrary: the locked squad car, the fact that the squad car blocked him in, the view from the windows of the back of the squad car, showing what could only appear to be a full-blown criminal investigation happening as if he wasn't even there.

*Terry* recognized the "narrow authority of police officers who suspect criminal activity to make limited intrusions on an individual's personal security based on less than probable cause." *Michigan v. Summers,* 452 U.S. 692, 698 (1981). "The reasonable suspicion standard is a deviation of the probable cause command, applicable only to those brief detentions which fall short of being full-scale searches and seizures and which are necessitated by law enforcement exigencies such as the need to stop ongoing crimes, to prevent imminent crimes, and to protect law enforcement officers in highly charged situations." *United States v. Tillman,* 81 F.3d 773, 775 (8th Cir. 1996). In determining whether this "narrow authority" permits a particular seizure on less than probable cause, courts "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged

22

to justify the intrusion." *United States v. Place,* 462 U.S. 696, 703 (1983).

The sole objectively reasonable reason justifying *any* investigative detention of Mr. Paton was the fact that Gretchen at the BCA said something like, "do whatever you have to, to protect those kids." Investigative detention was not necessary to protect the kids. If officers were concerned, they could have taken the kids home to their families and explained that a concerned citizen was concerned about their children hanging out with Mr. Paton. There is no evidence or even indication of evidence that the children would not have been safer at home than sitting in a parking lot full of squad cars while their adult companion was situated in the back of a squad car for *no particular reason*.

There was no justification for any investigative detention of Mr. Paton under any stretch of any standard. When the detention continued for over an hour based solely on the fact that he was a registered sex offender in the company of children, it turned into a full-scale arrest. At that legally undemarcated point, without probable cause, he should have been released. And past that point, any evidence gathered, regardless of whether investigative detention was justified, should have been suppressed as a matter of Fourth Amendment jurisprudence.

23

### B. Mr. Paton did not voluntarily consent to give the officers his wallet and camera card during the protracted detention/arrest.

If Mr. Paton was under "formal arrest" as defined and explained above, that has a significant impact on his ability to make a knowing and voluntary consent to seizure of his digital memory card. "Statements that result from an illegal detention are not admissible." *United States v. Hernandez-Hernandez*, 384 F.3d 562, 565 (8th Cir.2004). Mr. Paton's alleged statement, volunteering his digital memory card should likewise be disregarded.

As the district court noted, a defendant's voluntary consent to be searched is an exception to the Fourth Amendment's warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (A-13). A court determines whether consent is voluntary under the totality of the circumstances. *United States v. Gipp*, 147 F.3d 680, 685 (8th Cir.1998). The Government bears the burden of proving voluntary consent by a preponderance of the evidence and must show that the defendant behaved in such a manner that the officer reasonably believed that the search was consensual. *United States v. Cedano-Medina*, 366 F.3d 682, 684-85 (8th Cir. 2004); *United States v. Czeck*, 105 F.3d 1235, 1239 (8th Cir.1997).

"Consent is voluntary if it was 'the product of an essentially free and unconstrained choice by its maker, rather than the product of duress or coercion,

24

express or implied.'" *United States v. Bradley*, 234 F.3d 363, 366 (8th Cir.2000) (quoting *United States v. Chaidez*, 906 F.2d 377, 380 (8th Cir.1990)). Characteristics of persons giving consent that may be relevant include: "the party's age, intelligence and education, whether he was under the influence of drugs or alcohol, whether he was informed of his right to withhold consent, and whether he was aware of rights afforded criminal suspects". *United States v. Almendares*, 397 F.3d 653, 660 (8th Cir.2005).

Mr. Paton was and is an intelligent adult with a college education, presumably generally aware of police procedure. Although he may have been "informed" that he was not under arrest, and not handcuffed, he was not advised that he could withhold consent.

The environment in which the alleged consent took place is also considered, "specifically (1) the length of time he was detained; (2) whether the police threatened, physically intimidated, or punished him; (3) whether the police made promises or misrepresentations; (4) whether he was in custody or under arrest when the consent was given; (5) whether the consent occurred in a public or a secluded place; and (6) whether he stood by silently ... as the search occurred." *United States v. Smith*, 260 F.3d 922, 924 (8th Cir. 2001).

25

Mr. Paton was detained for at least an hour while backup was called, a canine search was conducted, officers drove to his wife's place of employment to obtain consent to search the vehicle, and at least one of the children's parents was contacted. There is no indication in the record that he was mistreated physically—and indeed the air-conditioning was on in the squad car. However, he was certainly in custody. Although the squad car was in a public place, the alleged conversation between Mr. Paton and Officer Schuck took place with no one else present—no witnesses.

Although the district court evaluated some of these criteria, it ultimately concluded that under the totality of the circumstances Mr. Paton consented to the search of his wallet for the digital memory card. (A-14). This conclusion was a clear error. Under the totality of the circumstances, Mr. Paton was in custody in the back of the squad car when Officer Schuck asked him for his wallet. His consent was not voluntary because he would have had no reason to believe that he could have withheld consent.

### C. All evidentiary fruits of this series of unconstitutional intrusions should have been suppressed, separately and cumulatively, as each was the fruit of the previous.

Finding a quantum of individualized suspicion only *after* a stop occurs

26

cannot justify the stop itself. "That result would have the same essential vice as a proposition we have consistently rejected--that a search unlawful at its inception may be validated by what it turns up." *Wong Sun v. United States,* 371 U.S. 471, 484 (1963). Evidence that is the "fruit" of an illegal search or seizure is not admissible, and "[t]he exclusionary prohibition extends as well to the indirect as the direct products of such invasions." *Wong Sun,* 371 U.S. at 484-85. The controlling question is " 'whether granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Id.* at 488 (citation omitted).

The district court and the Government relied on the supposed "fact" of Mr. Paton's voluntary consent to seizure of his digital memory card to avoid the fact that the card was seized during an investigative detention, without probable cause. If this court concludes that the investigative detention was unauthorized, either from the outset or because it became a full scale arrest, the issue becomes even thornier.

Even a voluntary consent to search, "preceded by an illegal police action, does not automatically purge the taint of an illegal detention." *United States v. Becker,* 333 F.3d 858, 862 (8th Cir. 2003). In order to purge the taint, the voluntary consent must be an "independent, lawful cause" of the seizure. In order to make that

Appellate Case: 07-3207    Page: 38    Date Filed: 12/10/2007 Entry ID: 3382402

determination, the district court would have needed to consider the following factors: 1) the temporal proximity between the illegal search and the consent; 2) the presence of intervening circumstances; and 3) the purpose and flagrancy of the official misconduct. *Id., citing, Brown v. Illinois*, 422 U.S. 590, 603-604 (1975); *United States v. Moreno*, 280 F.3d 898, 900 (8th Cir. 2002).

If this Court concludes that the district court erred in holding that the squad car detention was constitutional, any conclusion that the digital memory card seizure was voluntary and consensual must take the *Brown* factors into account.

## II. The search warrant affidavit did not provide adequate particularity or a nexus with criminal activity necessary for probable cause to support issuance of a warrant; evidence received therefrom should have been suppressed.

"The Fourth Amendment requires a showing of probable cause before a search warrant may be issued." *United States v. Williams,* 477 F.3d 554, 557 (8th Cir.2007). Probable cause to issue a search warrant is determined under the totality of the circumstances and "exists when an affidavit in support of the warrant sets forth sufficient facts to establish that there is a 'fair probability that contraband or evidence of' criminal activity will be found in the particular place to be searched." *United States v. Davis,* 471 F.3d 938, 946 (8th Cir.2006) (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983)); *United States v. Gladney,* 48 F.3d 309, 313 (8th

28

Cir.1995); *United States v. Tagbering,* 985 F.2d 946, 949 (8th Cir.1993); *United States v. May,* 440 F.Supp.2d 1016, 1039 (D.Minn. 2006).

The July 17, 2006 search warrant application, (AA-23 – AA-33) did not set forth any basis to believe that a computer or camera would be found in Mr. Paton's home or vehicle. The affidavit provided very general, boilerplate "what we know about child pornographer" language. It did not provide any particularized information related to Mr. Paton's home. This was the fatal flaw in the warrant application.

This court reviews a magistrate judge's determination of probable cause "to ensure that the magistrate had a substantial basis for ... concluding that probable cause existed. *Gladney,* 48 F.3d at 312 (quoting *Gates,* 462 U.S. at 238 ). Where as here, there has been no evidentiary hearing before the magistrate judge, the probable cause determination must be based upon "only that information which is found within the four corners of the affidavit." *Id.* (quoting *United States v. Leichtling,* 684 F.2d 553, 555 (8th Cir.1982)); *United States v. Olvey,* 437 F.3d 804, 807 (8th Cir.2006) (noting that probable cause must be determined from the warrant affidavit alone if there is no evidentiary hearing before the issuing magistrate).

The critical issue here involves the lack of a nexus between the items sought to be seized and the place to be searched. This nexus is required before a warrant

Appellate Case: 07-3207    Page: 40    Date Filed: 12/10/2007 Entry ID: 3382402

may properly issue. *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). Although child pornographers might often use digital cameras, and Mr. Paton's camera was found in the park, there is no reason to believe that there was *another camera*. There is no factual allegation in the affidavit establishing even that probability. Likewise, the district court relied on Sergeant Harris' attestation that officers might often expect to find collateral items in a narcotics search, if she looked in Mr. Paton's computer she might find images of minors. This is not a nexus. Nor is the portion of the affidavit relied upon by the district court, averring that "Computer systems and the internet have replaced the file cabinet for the repository of evidence." This ignores the fact that a search warrant application seeking to seize contents of a locked file cabinet, would need to describe a reason to believe that such a file cabinet would be found in the place to be searched.

This would not have been an impossible task. Police departments have resources to track internet activity to a particular place. This would have provided such a nexus. This was not part of the affidavit.

The district court correctly noted that the affidavit provided probable cause that criminal activity had been afoot, and that Mr. Paton had been involved in that activity. However, there was simply no reason to believe that a computer or camera

30

would be found in his home.  That nexus was absent and that absence undermined the constitutionality of the warrant.

### III. Sentencing a 60 year old diabetic man to life imprisonment is a cruel and unusual punishment and therefore unreasonable under any construction of the Guidelines or sentencing statutes.

Mr. Paton understood that his sentence would likely involve a lifetime of imprisonment.  The applicable mandatory minimum was 420 months to life. 18 U.S.C. §2251(e).  The district court was permitted to exercise its discretion in sentencing Mr. Paton within this range.  Concededly, a defendant's present age is legally irrelevant to the validity of a sentence under the Eighth Amendment. *United States v. Murphy,* 899 F.2d 714 (8th Cir. 1990). At sentencing, Mr. Paton was 60 years old.  Imposition of the minimum sentence of 35 years would make him 95 years old at the conclusion of his sentence. The Court imposed a life sentence.

A sentence within statutory limits is not generally subject to Eighth Amendment review. *United States v. Atteberry*, 447 F.3d 562 (8th Cir. 2006).

The Eighth Amendment forbids sentences that are grossly disproportionate to the crime. *See United States v. Mendoza,* 121 F.3d 441, 442-43 (8th Cir. 1997). "A life sentence without parole differs qualitatively from a sentence for a term of years

31

or a life sentence with the prospect of parole. As with the death penalty, the State totally rejects rehabilitation as a basic goal of our criminal justice system by imposing a life sentence without parole. Because a life sentence without parole differs in kind from other sentences of imprisonment, the constitutional prohibition against cruel and unusual punishment requires that it bear some relationship to the severity of the underlying crime." *Helm v. Solem,* 684 F.2d 582, 585-6 (8th Cir. 1982).

The applicable mandatory minimum sentence in this case rejects any possibility of rehabilitation.  It seems to ignore the reality that pedophilia is a disease that can be treated.  The offense conduct involved in this case is unquestionably a manifestation of the disease of pedophilia. By rejecting the possibility of rehabilitation, the effect of the mandatory minimum is to create a category of mental illness that must ipso facto result in imprisonment.

Manifestation of pedophilia in this case, in the offense conduct charged, is not violent conduct.  It is unquestionably damaging to victims and to society, as are many other categories of mental illness related criminal proclivity.  It is difficult, if not impossible to explain how this offense conduct bears the necessary relationship to the severe punishment of life imprisonment.

32

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle that applies to noncapital sentences." *Ewing v. California,* 538 U.S. 11, 20 (2003)). The Supreme Court has made it clear that '[o]utside the context of capital punishment, *successful* challenges to the proportionality of sentences are exceedingly rare.' " *Solem v. Helm,* 463 U.S. 277, 289-90 (1983). The Supreme Court recognized three factors that may be relevant in determining whether a sentence is so disproportionate that it violates the Eighth Amendment: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Ewing,* 538 U.S. at 22 (citing *Solem,* 463 U.S. at 292).

The offense conduct Mr. Paton was convicted of in this case was defined by depravity, selfishness and untreated pedophilic proclivity. The only penalty harsher would be capital punishment. As the district court mentioned in sentencing Mr. Paton, "We don't often sentence people to life. It's not something any judge likes to do." (S.T. 8). Undersigned counsel is unaware of another case in this Circuit where life imprisonment has been imposed for a similar crime.

33

In imposing sentence, the district court relied heavily on the fact of Mr. Paton's criminal history, the same history that availed him to the mandatory minimum scheme and similar Sentencing Guidelines range. The fact of this history of pedophilic criminal activity essentially counted twice in the court's sentencing calculus. Because Mr. Paton had relevant criminal history, the mandatory minimum applied, and because of that same history, he was sentenced to the maximum penalty available. The court's concern was that if Mr. Paton was ever released from custody, he would reoffend—that the mental disease that brought him to the place he stood on the day of sentencing would not somehow resolve during any period of incarceration. That ignores the option of treatment and rehabilitation, a ubiquitous objective of federal criminal sentencing. This sentence was disproportionate in violation of the Eighth Amendment because it arbitrarily dispensed with the goal of rehabilitation. A sentence of thirty-five years, the mandatory minimum would allow for the long-term possibility of rehabilitation, and such a sentence would be proportionate.

## CONCLUSION

Based on the foregoing, Mr. Paton respectfully requests this Court reverse the district court's pretrial suppression rulings and remand this case to allow Mr.

34

Paton to withdraw his conditional plea. In the alternative, Mr. Paton requests this

Court hold that the life sentence imposed was unconstitutionally disproportionate

and remand for resentencing at the mandatory minimum.

Dated: November 29, 2007

                                      Respectfully submitted,


_____

Jennifer M. Macaulay
MN Attorney ID: 316842
649 Grand Avenue
Suite 2
St. Paul, MN 55105
PH: 651-231-1237
Counsel for the Appellant

35

In The
UNITED STATES COURT OF APPEALS
For The Eighth Circuit

| United States, | ) | |
| | ) | |
| Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Lyle Robert Paton, | ) | APPEAL NO. 07-3207 |
| | ) | CERTIFICATE OF COMPLIANCE |
| Appellant. | ) | AND OF VIRUS FREE DISK |


I hereby certify that the Brief of Appellant filed in contains 8,360 words, excluding the table of contents, table of citations, statements with respect to oral argument, preliminary statement, statement of issues, addendum and certificates of counsel and service, as counted by the word-processing system (Microsoft Word, 2003) used to generate the brief. The brief otherwise complies with the type-volume limitations set forth in F.R.A.P. 32(a)(7)(B) and (C) and Eighth Circuit Rule 28A(c).

I also certify that the CD-ROMs forwarded to the court and opposing counsel have been scanned for viruses and are virus free.

Dated: November 29, 2007

Respectfully submitted,

_____
Jennifer M. Macaulay
MN Attorney ID: 316842
649 Grand Avenue
Suite 2
St. Paul, MN 55105
PH: 651-231-1237
Counsel for the Appellant